1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10
11   RITA JERVISS and VINCE JERVISS,        No.  2:15-CV-01904-MCE-KJN
12              Plaintiffs,
13        v.                                 **MEMORANDUM AND ORDER**
14   SELECT PORTFOLIO SERVICING,
     INC., NATIONAL DEFAULT
15   SERVICING CORPORATION, and
     DOES 1-10, inclusive,
16
               Defendants.
17
18
19        Plaintiffs Rita and Vince Jerviss ("Plaintiffs") brought this action for negligence and

20   violations of the California Homeowners Bill of Rights ("CHBR"), seeking damages and

21   an injunction to prevent Defendants Select Portfolio Servicing, Inc. ("SPS") and National

22   Default Servicing Corporation (collectively, "Defendants") from foreclosing on their home.

23   Defendants removed the action from the Sacramento County Superior Court to this

24   Court and filed the pending Motion to Dismiss (ECF No. 15).  Also pending before the

25   Court is Plaintiffs' Motion to Remand (ECF No. 23-2).  As explained more fully below,

26   Plaintiffs' Motion to Remand is DENIED and Defendants' Motion to Dismiss is

27   GRANTED.[1]

28   _____
     [1] Because oral argument would not be of material assistance, the Court ordered this matter

                                          1

1

2

**BACKGROUND**[2]

3

Plaintiffs' home is located at 193 Glacier Circle, Vacaville, California, 95687

4

("Subject Property").  Defendant SPS services the mortgage loan for the Subject

5

Property and Defendant National Default Servicing Corporation is the trustee for the

6

corresponding deed of trust.  Although SPS had previously modified their loan, Plaintiffs

7

found themselves in arrears on their mortgage payments in 2013 and began applying for

8

a second loan modification.  The application process for the second loan modification

9

took nearly two years because SPS repeatedly requested additional documents.

10

On March 26, 2015, Defendants recorded a Notice of Trustee's Sale on the

11

Subject Property and scheduled a sale date of April 16, 2015.  Defendants postponed

12

that sale date before it was scheduled to occur.[3]  On April 29, 2015, Defendants

13

acknowledged that Plaintiffs' application was complete.  By letter dated May 14, 2015,

14

Defendant SPS denied Plaintiffs' application.  Plaintiffs timely appealed the denial by

15

letter dated June 8, 2015.  Defendant SPS denied Plaintiffs' appeal and rescheduled the

16

Trustee's Sale for August 17, 2015.

17

On August 12, 2015, Plaintiffs filed a complaint in Sacramento County Superior

18

Court, alleging five causes of action against Defendants for negligence and for violations

19

of California Civil Code sections 2923.6(c), 2923.6(e), 2923.7, and 2924.10.[4]

20

Specifically, Plaintiffs allege that they submitted a complete loan modification in February

21

or early March of 2015, but that Defendants proceeded with the foreclosure process

22

while this application was pending.  Plaintiffs further allege that after Defendants

23

24

submitted on the briefs.  E.D. Cal. Local R. 230(g).

25

26

[2] The following recitation of background facts is based entirely on Plaintiffs' Complaint (ECF No. 1-1).  Procedural details are taken from the Court's Memorandum and Order denying Plaintiffs' Motion for a Preliminary Injunction (ECF No. 22).

27

[3] It is not clear from the Complaint when Defendants postponed the April 16, 2015 Trustee's Sale.

28

[4] All further reference to "section" or "sections" are to the California Civil Code unless otherwise indicated.

1    belatedly acknowledged their receipt of the completed application, they denied it and

2    proceeded with the foreclosure process without considering or acknowledging Plaintiffs'

3    timely appeal.  Furthermore, Plaintiffs alleged that Defendant SPS never gave them a

4    single point of contact in handling their loan modification application, and that Defendant

5    SPS did not acknowledge receiving application materials within five days as required by

6    section 2924.10.  Plaintiffs charge that these statutory violations also give rise to a

7    common law claim for negligence.

8         The Superior Court issued a Temporary Restraining Order ("TRO") on August 14,

9    enjoining Defendants "from conducting or carrying to completion any Trustee's Sale of

10   the Subject Property" and scheduled the Motion for Preliminary Injunction to be heard on

11   September 22.  On August 16, Defendants rescheduled another Trustee's Sale of the

12   Subject Property for October 2, 2015.  However, the day Defendants' opposition to the

13   Motion for Preliminary Injunction was due in Superior Court, Defendants instead

14   removed the case to this Court.  The previously issued TRO expired, and Plaintiffs filed a

15   new application for temporary relief here.  This Court issued a TRO enjoining

16   Defendants from performing any act in furtherance of holding a Trustee's Sale of the

17   Subject Property until it could hear Plaintiffs' Motion for a Preliminary Injunction.  In the

18   meantime, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil

19   Procedure 12(b)(6), and both parties filed supplemental briefing supporting their

20   respective positions on the propriety of a preliminary injunction.

21        On October 13, the Court denied Plaintiffs' Motion for a Preliminary Injunction.

22   Importantly, the Court found that Plaintiffs had not established a serious question going

23   to the merits of their claim because documentary evidence submitted by Defendants

24   showed that Plaintiffs' application for a loan modification was not complete until late April

25   2015.  Plaintiffs then filed their Motion to Remand the action to the Superior Court.

26   ///

27   ///

28   ///

3

1

**STANDARDS**

2

3       **A.      Motion to Remand**

4              When a case "of which the district courts of the United States have original

5       jurisdiction" is initially brought in state court, the defendant may remove it to the federal

6       court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  There

7       are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction

8       under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district

9       court has federal question jurisdiction in "all civil actions arising under the Constitution,

10      laws, or treaties of the United States."  Id. § 1331.  A district court has diversity

11      jurisdiction "where the matter in controversy exceeds the sum or value of $75,000,

12      . . . and is between citizens of different states, or citizens of a State and citizens or

13      subjects of a foreign state . . . ."  Id. § 1332(a)(1)-(2).

14             Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff

15      being a citizen of a different state from each defendant.  28 U.S.C.

16      § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete

17      diversity of citizenship is required); Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067

18      (9th Cir. 2001) (same).  The "one exception to the requirement of complete diversity is

19      where a non-diverse defendant has been 'fraudulently joined'" to defeat

20      diversity.  Morris, 236 F.3d at 1067.  Allegations of fraudulent joinder can succeed only

21      on a showing that the plaintiff has failed to assert a cause of action against that

22      defendant, "and the failure is obvious according to the well-settled rules" of state

23      law.  United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 761 (9th Cir. 2002)

24      (citing Morris, 236 F.3d at 1067).  The court may look beyond the pleadings and consider

25      affidavits or other evidence to determine if the joinder was a sham.  See Morris, 236 F.3d

26      at 1068 (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263 (9th Cir.

27      1995) ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and

28      considering summary judgment-type evidence such as affidavits and deposition

4

1    testimony.")).

2         A motion to remand is the proper procedure for challenging removal.  "The party

3    invoking the removal statute bears the burden of establishing federal

4    jurisdiction."  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)

5    (internal citations omitted).  Courts "strictly construe the removal statute against removal

6    jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations

7    omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the

8    motion for remand must be granted.  Gaus, 980 F.2d at 566.  Therefore, if it appears "at

9    any time before final judgment that the district court lacks subject matter jurisdiction, the

10   case shall be remanded" to state court.  28 U.S.C. § 1447(c).

11        **B.    Motion to Dismiss**

12        On a motion to dismiss for failure to state a claim under Federal Rule of Civil

13   Procedure 12(b)(6), all allegations of material fact must be accepted as true and

14   construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

15   Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain

16   statement of the claim showing that the pleader is entitled to relief' in order to 'give the

17   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

18   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

19   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

20   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

21   his entitlement to relief requires more than labels and conclusions, and a formulaic

22   recitation of the elements of a cause of action will not do."  Id. (internal citations and

23   quotations omitted).  A court is not required to accept as true a "legal conclusion

24   couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

25   (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

26   to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

27   Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

28   that the pleading must contain something more than "a statement of facts that merely

5

1    creates a suspicion [of] a legally cognizable right of action")).

2    　　　　Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

3    assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and

4    quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

5    to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

6    the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &

7    Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to

8    relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their

9    claims across the line from conceivable to plausible, their complaint must be

10   dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a

11   savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

12   remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236

13   (1974)).

14   　　　　A court granting a motion to dismiss a complaint must then decide whether to

15   grant leave to amend.  Leave to amend should be "freely given" where there is no

16   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

17   to the opposing party by virtue of allowance of the amendment, [or] futility of the

18   amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

19   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

20   be considered when deciding whether to grant leave to amend).  Not all of these factors

21   merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

22   carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

23   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

24   "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

25   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

26   1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

27   1989) ("Leave need not be granted where the amendment of the complaint . . .

28   constitutes an exercise in futility . . . .")).

1  ///

2  ///

3                                    **ANALYSIS**

4

5          **A.      Plaintiffs' Motion to Remand**

6          Plaintiffs seek an order remanding this action to the Superior Court on the

7  grounds that Defendants cannot show this action satisfies the $75,000 amount in

8  controversy requirement of 28 U.S.C. § 1332.  Specifically, Plaintiffs contend that it is

9  improper to treat the value of the home or the outstanding loan amount as the amount in

10 controversy for purposes of a lawsuit brought under the CHBR.  Plaintiffs further argue

11 that Defendants cannot satisfy the amount in controversy requirement here by

12 aggregating their requests for various types of damages, injunctive relief, and attorney's

13 fees.  Contrary to Plaintiffs' arguments, the value of the loan is a proper measure of the

14 amount in controversy in this case and this Court has diversity jurisdiction over this

15 action.

16         It is well established that the amount in controversy in actions seeking declaratory

17 or injunctive relief is measured by the value of the object of the litigation.  Gardner v.

18 Nationstar Mortg. LLC, No. 2:14-cv-1583, 2014 WL 7239496 at *2 (E.D. Cal. Dec. 16,

19 2015) (quoting Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002)).  But in CHBR

20 cases, "the fact that Plaintiffs' complaint . . . seeks to enjoin a potential foreclosure, is not

21 dispositive of whether the loan amount establishes the amount in controversy for

22 purposes of diversity jurisdiction."  Vonderscher v. Green Tree Servicing, LLC,

23 No. 2:13-cv-00490, 2013 WL 1858431 at *3 (E.D. Cal. May 2, 2013).  Instead, the Court

24 conducts a functional analysis of the amount in controversy based on the plaintiff's

25 primary objective in bringing suit.  In doing so, the Court looks to whether the plaintiff

26 primarily seeks to enjoin a foreclosure or instead primarily seeks damages under what

27 essentially constitutes a common law fraud action.  Id. at *4.  To make this

28 determination, the Court considers whether the plaintiff is in default on its loan, whether

                                       7

1  a notice of default has been filed, and whether foreclosure proceedings are

2  imminent.  See id.; see also Lenau v. Bank of America, N.A., No. 2:15-cv-01374, 2015

3  WL 5522083 at *2 (E.D. Cal. Sept. 16, 2015).  If the primary purpose of the plaintiff's suit

4  is to prevent foreclosure, then the loan amount is the proper measure of the amount in

5  controversy.  See id.

6      Here, it is clear that Plaintiffs' desire for an injunction that prevents Defendants

7  from conducting a trustee's sale of the Subject Property predominates over their desire

8  for unspecified damages under the CHBR.  Plaintiffs admit that they have been in default

9  for more than a year and that Defendants recorded a Notice of Default nearly a year

10  ago.  ECF No. 1-1 at 16-18, ¶¶ 57, 65.  See Vonderscher, 2013 WL 1858431 at *4.

11  Furthermore, foreclosure proceedings are imminent and would have already occurred

12  had Plaintiffs not obtained temporary restraining orders from both this Court and the

13  Superior Court.  ECF No. 17 at 2; see also ECF No. 23 at 2.  Finally, Plaintiffs' prayer for

14  relief does not merely seek "to delay foreclosure proceedings temporarily . . . pending a

15  decision on their loan modification application."  ECF No. 23-2 at 7.  Not only have

16  Plaintiffs already received that decision, but Plaintiffs' request for an injunction is not

17  time-limited in any way.  ECF No. 1-1 at 11, 20.  Thus, Plaintiffs primarily seek to enjoin

18  foreclosure here and the outstanding value of the loan is therefore the proper measure

19  of the amount in controversy.  See Vonderscher, 2013 WL 1858431 at *4.

20      Defendants' Notice of Removal alleges that the unpaid balance on the Note is

21  $255,999.45, and Defendants provide factual support for that allegation.  ECF No. 1 at

22  4-5; ECF No. 28-1.  Defendants have thus met their burden of establishing that it is more

23  likely than not that the amount in controversy exceeds $75,000.  Accordingly, this Court

24  has subject matter jurisdiction over this action under 28 U.S.C. § 1332.  Plaintiffs' Motion

25  for Remand is therefore DENIED.

26      **B.  Defendants' Motion to Dismiss**

27      Defendants argue that Plaintiffs' Complaint fails to state a claim under Rule

28  12(b)(6).  The Court will evaluate each of Plaintiffs' causes of action in turn.

1  ///

2  ///

### 1.    First Cause of Action for Negligence

Plaintiffs' First Cause of Action alleges that Defendants were negligent in handling their loan modification application.  Defendants contend that Plaintiffs' First Cause of Action must be dismissed because a mortgage servicer does not owe a borrower a duty of care in processing the borrower's loan modification application.  Plaintiffs oppose this argument by citing to several cases in which courts have determined that mortgage servicers are obligated to handle borrowers' applications for loan modifications with reasonable care.

In order to state a claim for negligence, a plaintiff must allege that the defendant owed him or her a duty of care.  Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 62 (Cal. Ct. App. 2013).  Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  Id. at 63. While some district courts have held that a financial institution no longer acts as a conventional money lender once it accepts an application for a loan modification, the "decisive weight of authority" is that accepting such an application does not give rise to a duty of care.  Okada v. Bank of America, N.A., No. SACV 15-00981-CJC(Ex), 2015 WL 5556937 at *4 (C.D. Cal. Sept. 16, 2015); see also Becker v. Wells Fargo Bank NA, Inc., No. 2:10-cv-2799, 2014 WL 3891933 at *19 (E.D. Cal. Aug. 7, 2014) (explaining that "the majority of cases that have addressed the issue" hold that engaging in the loan modification process does not create a duty of care).

This Court follows the majority position.  A loan modification is nothing more than a renegotiation of loan terms.  Williams v. Wells Fargo Bank, NA, No. EDCV 13-02075 JVS (DTBx), 2014 WL 1568857 at *7 (C.D. Cal. Jan. 27, 2014).  Renegotiating loan terms falls squarely within Defendants' conventional role as a money lender.  Okada, 2015 WL 5556937 at *4.  Defendants therefore owed no duty of care to Plaintiffs' in

1    processing their loan modification. Plaintiffs' First Cause of Action is accordingly

2    DISMISSED.

3                **2.**       **Second Cause of Action for Violation of Section 2923.6(c)**

4        Plaintiffs' Second Cause of Action alleges that Defendants violated California Civil

5    Code section 2923.6(c) by recording a Notice of Trustee's Sale on March 26, 2015 when

6    Plaintiffs' completed loan modification application was pending. Defendants argue that

7    they cannot be liable under this statute because they corrected and remedied the

8    alleged violation by postponing the sale, reviewing the complete application, and

9    denying the application in a written decision. Plaintiffs' Opposition does not address this

10    argument.

11        Section 2923.6(c) provides:

12

13            If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

14

15

16

17

18            (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

19

20            (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

21

22            (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

23

24    If the mortgage servicer corrects and remedies a violation prior to the recordation of a

25    trustee's deed upon sale, however, it is not liable for violating section 2923.6(c). Cal.

26    Civ. Code § 2924.12(c).

27        Here, Plaintiffs do not allege that a trustee's deed upon sale has been recorded.

28    Furthermore, the Complaint shows that Defendants cured the alleged violation of section

2923.6(c) by delivering a "written determination in the form of a denial to Plaintiffs' application for a loan modification" on May 14, 2015.  ECF No. 1-1 at 14, ¶ 43. Accepting Plaintiffs' allegations as true, Defendants cured any purported violation of section 2923.6(c) by complying with the provisions of Civil Code section 2924.12(c). Plaintiffs' Second Cause of Action is accordingly DISMISSED.

### 3.      Third Cause of Action for Violation of Section 2923.6(e)

California Civil Code section 2923.6(e) provides that if a mortgage servicer denies a borrower's loan modification application, the mortgage servicer

> shall not record a notice of default, or if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale  until the later of:
>
> (1) Thirty one days after the borrower is notified in writing of the denial[; or]
>
> (2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower . . . .

Here, Plaintiffs Third Cause of Action depends on the allegation that Defendants never sent Plaintiffs a written determination regarding the alleged appeal and proceeded with and were proceeding with a July 17, 2015 trustee's sale of the Subject Property. ECF No. 1-1 at 12, 16.  Yet Plaintiffs admit in their Opposition that Defendants postponed that sale date and "issued a denial letter to Plaintiffs' timely submitted written appeal . . . ."  ECF No. 27 at 13.  Furthermore, the Complaint does not allege that Defendants recorded a notice of default, a notice of sale, or conducted a trustee's sale less than fifteen days after the appeal was denied.  See Cal. Civ. Code section 2923.6(e)(2).[5]  Plaintiffs' Third Cause of Action thus fails to state a claim for violation of Civil Code section 2923.6(e) and is accordingly DISMISSED.

---

[5] Plaintiffs' Opposition contends that paragraphs 44 and 45 of the Complaint allege that Defendants' postponement of the sale qualifies as "conducting" a trustee's sale for purposes of Civil Code section 2923.6(e).  ECF No. 27 at 13 (citing Singh v. Wells Fargo Bank, N.A., No. 34-2013-00151461-CU-OR-GDS (Cal. Super. Ct. Sacramento Cnty. Feb. 24, 2014)).  Yet paragraphs 44 and 45 of the Complaint make no allegations concerning either the postponement of the sale or any indications that it would have been carried out regardless of the result of the appeal.

1   ///

2   ///

3                   **4.      Fourth Cause of Action for Violation of Section 2923.7**

4          California Civil Code section 2923.7 provides that a mortgage servicer must

5   promptly establish a single point of contact upon "request from a borrower who requests"

6   a loan modification in lieu of foreclosure.  Defendant SPS argues that Plaintiffs' Fourth

7   Cause of Action under Civil Code section 2923.7 must be dismissed because Plaintiffs

8   have not alleged that they ever requested a single point of contact.  Plaintiffs contend

9   that their application for a foreclosure prevention alternative automatically obliged

10  Defendant SPS to provide a single point of contact regardless of whether they made a

11  specific request.

12         As Plaintiffs observe, several federal district courts have held that merely

13  requesting a foreclosure alternative triggers a mortgage servicer's obligation to assign a

14  single point of contact.  See, e.g., McFarland v. JP Morgan Chase Bank, No. EDCV

15  13-01838, 2014 WL 4119399 at *11 (C.D. Cal. Aug. 21, 2014) (citing Penermon v. Wells

16  Fargo Bank, N.A., 47 F. Supp. 3d 982, 1000 (N.D. Cal. 2014).  On the other hand, other

17  courts, including this one, have held that a borrower must specifically request a single

18  point of contact to create an obligation for the servicer to provide one.  See, e.g., Hatton

19  v. Bank of America, N.A., No. 1:15-cv-00187, 2015 WL 4112283 at *6 (E.D. Cal. July 8,

20  2015) (citing Carbajal v. Wells Fargo Bank, N.A., No. CV 14-7851, 2015 WL 2454054 at

21  *7 (C.D. Cal. April 10, 2015).

22         Defendants' argument is more faithful to the plain language of section 2923.7.  In

23  interpreting statutes, courts must avoid treating statutory terms as "superfluous, void or

24  insignificant."  TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001).  The plain language of Civil

25  Code section 2923.7(a) requires two explicit requests: (1) the borrower must request a

26  foreclosure prevention alternative and (2) the borrower must request a single point of

27  contact.  Hatton, 2015 WL 4112283 at *6.  If the Legislature intended to trigger the

28  obligation to provide a single point of contact upon a borrower's request for a foreclosure

                                                    12

1    alternative, it would not have specifically referenced the borrower's need to request a

2    single point of contact in the introductory clause of Civil Code section 2923.7(a).  The

3    Court will not adopt Plaintiffs' argument and thereby treat that introductory clause as

4    "superfluous, void, or insignificant."   TRW Inc., 534 U.S. at 31 (2001).  By failing to

5    allege that Plaintiffs requested a single point of contact, the Complaint fails to state a

6    claim under section 2923.7(a); the Fourth Cause of Action is therefore DISMISSED.

7              **5.       Fifth Cause of Action for Violation of Section 2924.10**

8              Section 2924.10 provides that a mortgage servicer must provide written

9    acknowledgment within five days of receiving "a complete first lien modification

10   application or any document in connection with a first lien modification application."

11   Defendant SPS argues that Plaintiffs' Fifth Cause of Action fails to state a claim for

12   violation of section 2924.10 because the Complaint does not indicate which submissions

13   Defendant SPS did not respond to.  Furthermore, Defendants contend that they have

14   corrected and remedied any purported violation of section 2924.10 by postponing the

15   trustee's sale and denying Plaintiffs' complete application for a loan modification.

16   Plaintiffs fail to address these arguments.

17             Standing alone, the Complaint's failure to identify which submissions Defendant

18   SPS allegedly did not respond to in a timely manner requires dismissal of Plaintiff's Fifth

19   Cause of Action.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual

20   allegations must be enough to raise a right to relief above the speculative level.").

21   Moreover, as with Plaintiffs' Second Cause of Action, the Complaint makes it clear that

22   Defendant SPS cured any alleged violation of section 2924.10 by postponing the

23   trustee's sale, acknowledging receipt of Plaintiff's complete application on April 29, 2015,

24   and denying that application on May 14, 2015.  See Cal. Civ. Code § 2924.12(c); ECF

25   No. 1-1 at 9, ¶ 35; Id. at 14, ¶ 43.  Plaintiffs' Fifth Cause of Action is therefore

26   DISMISSED.

27             **C.      Leave to Amend**

28             Having dismissed Plaintiffs' Complaint in its entirety, the Court next considers

                                              13

1   whether to grant leave to file an amended complaint.  The Court finds that it would be

2   futile for Plaintiffs to amend their First, Second, Third, and Fifth Causes of Action

3   because: (1) Plaintiffs cannot state a claim for negligence against Defendants for acting

4   in their conventional roles as moneylenders; (2) the Complaint admits that Defendants

5   cured any purported violations of sections 2924.10 and 2923.6; and (3) Plaintiffs admit

6   that they received a timely denial of their written appeal.  See Ascon Props., Inc. v. Mobil

7   Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the

8   amendment of the complaint . . . constitutes an exercise in futility . . . .").  Plaintiffs could

9   conceivably state a claim for violation of section 2923.7, however, by amending their

10  Complaint to include an allegation that they requested a single point of contact at

11  Defendant SPS in conjunction with their loan modification application.

12        Although Defendants do not explicitly use the term "bad faith" or "dilatory motive,"

13  they essentially argue that Plaintiffs' Complaint deliberately asserts baseless facts and

14  futile legal theories to delay "lawful non-judicial foreclosure proceedings on the property

15  at issue."  ECF No. 15 at 1.  Such allegations, if true, demonstrate that Plaintiffs filed

16  their Complaint in bad faith and with a dilatory motive that would create the strong

17  showing necessary to justify the Court's dismissal of the Complaint without leave to

18  amend.  Eldridge v. Rochester City School Dist., 968 F. Supp. 2d 546, 555 (W.D.N.Y.

19  2013).

20        There is ample evidence before the Court that Plaintiffs have brought this action

21  in bad faith to delay the foreclosure of their home.  First, Plaintiffs belated admission that

22  they received a timely written denial of their appeal as required by Civil Code section

23  2923.6(e) directly contradicts the facts alleged to support their Third Cause of Action.

24  Plaintiffs had ample time to request leave to amend their Complaint to correct this error,

25  but did not do so.  Second, Plaintiffs admit that they had not made a single payment on

26  their mortgage loan for more than a year before they filed their Complaint.  ECF No. 1 at

27  13-14, ¶ 57.  This failure to even attempt to ameliorate their admitted default—a default

28  that occurred after Plaintiffs received a previous loan modification—suggests that this

14

1  action is nothing more than a ploy to remain in a home Plaintiffs cannot afford.  Finally, in

2  deciding Plaintiffs' Motion for a Preliminary Injunction, the Court discovered that several

3  allegations that were central to Plaintiffs' claims were false.  For example, Defendant

4  SPS notified Plaintiffs of the incompleteness of their application on March 13, March 31,

5  and April 20, 2015.[6]  In view of these admissions and contradictions, the Court finds that

6  Plaintiff brought this action in bad faith and with a dilatory purpose.  Accordingly, the

7  Complaint is DISMISSED with prejudice.[7]

8

9  **CONCLUSION**

10

11       For the reasons set forth above, Plaintiffs Motion to Remand (ECF No. 23-2) is

12  DENIED.  Defendants' Motion to Dismiss (ECF No. 15) is GRANTED.  Plaintiffs'

13  Complaint (ECF No. 1-1) is therefore DISMISSED without leave to amend.  The Clerk of

14  the Court is directed to close this action.

15       IT IS SO ORDERED.

16  Dated:  November 24, 2015

17

18

19  _____
   MORRISON C. ENGLAND, JR., CHIEF JUDGE

20  UNITED STATES DISTRICT COURT

21

22

23

24

25

---

26       [6] Plaintiffs' willingness to play fast and loose with the facts surrounding the circumstances of their
   loan modification application process is succinctly illustrated by the chart contained in Defendants'

27  Supplemental Opposition to Plaintiff's Motion for a Preliminary Injunction.  See ECF No. 19 at 4-7.

28       [7] The Court declines to sanction Plaintiffs and their counsel under Rule 11 in light of this result.